IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARILYN D. BEARDEN                                                                PLAINTIFF

      v.                              CIVIL NO. 13-2211

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                    DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Marilyn D. Bearden, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits under the provisions of Title XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

      Plaintiff protectively filed an application for SSI on March 17, 2011, alleging an inability to work since November 22, 2011, due to back pain, depression, arthritis - joint pains, and right shoulder problems. (Tr. 11, 215). Plaintiff's claim was denied initially and on reconsideration. An administrative hearing was held on June 12, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 25-57).

      At the time of the administrative hearing, Plaintiff was fifty-five years of age and possessed a GED. (Tr. 31, 216). Plaintiff had past relevant work ("PRW") experience as a kitchen helper/dishwasher, cashier, retail stocker, and plastic pipe gluer. (Tr. 53-54).

By a written decision dated August 23, 2012, the Administrative Law Judge ("ALJ") determined that Plaintiff had the following severe impairments: "arthritis, lumbar degenerative disc disease of the back, shoulder right rotator cuff tear, asthma, and depression." (Tr. 13). After reviewing all of the evidence presented, however, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in CFR 416.967(b) except lift/carry up to 10 pounds frequently and 20 pounds occasionally; stand/walk up to 6 hours in an 8 hour workday and sit up to 6 hours; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes and scaffolds; frequent balance, stoop, kneel and crouch; occasional crawl; occasional overhead reach on the right; frequent handle and finger bilaterally; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation; able to work where interpersonal contact is routine but superficial; complexity of tasks is learned by experience, several variables, judgment within limits; and the supervision required is little for routine but detailed for non-routine. (T. 14). With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her PRW as a kitchen helper/dishwasher, convenience store cashier, retail stocker, and plastic pipe gluer. (Tr. 18-19, 52-56). The ALJ then found that Plaintiff had not been under a disability, during the relevant time period. (Tr. 19).

Plaintiff requested a review of the hearing decision by the Appeals Council on September 23, 2012 (Tr. 5-7), which denied that request on July 19, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the

parties. (Doc. 7). Both parties have filed appeals briefs, and the case is ready for decision. (Doc. 12, 14).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at lease one year and that prevents her from engaging in substantial gainful activity. *Pearsall v.*

3

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)©. A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920 (2003).

**III. Discussion**

The Court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A. Step Two Analysis:**

Plaintiff argues that the ALJ erred by not considering her alleged hand and manipulative problems, carpal tunnel syndrome, hearing loss, insomnia, migraines, and mental disorders, or the effects of medications that she takes to treat these conditions, in combination with her other impairments. (Pl. Br. 17). The ALJ wrote that he considered all of Plaintiff's conditions and

4

determined that several alleged limitations were not severe because they did not cause more than minimal functional limitations. (Tr. 13).

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step two, the claimant bears the burden of proving that she has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431.

The ALJ set forth that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is severe or a combination of impairments that is severe." (Tr. 12). The ALJ also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 12). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr. 12). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011); *Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005).

Plaintiff's activities of daily living and the absence of any evidence that documented other severe impairments supported the ALJ's determination that Plaintiff did not have additional severe impairments. In her Disability Report, Plaintiff only listed "back, arthritis, a right shoulder

5

problem, and depression" as her limiting conditions. (Tr. 215). Plaintiff's failure to allege any other impairments in her application for disability benefits was significant, even if the evidence of the impairment was later developed. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). At her hearing, Plaintiff additionally testified that she suffered from insomnia, which was treated by trazodone; migraines, which were treated by Zomig; anxiety when driving; and memory problems. (Tr. 38-39, 41-43, 48-49).

Although the ALJ did not determine that Plaintiff's memory or anxiety conditions were severe impairments, the ALJ addressed both conditions in the written decision. (Tr. 14). While the discussion was brief, the conditions were addressed. When the record does not support a condition to be a severe impairment, the ALJ's duty to discuss the condition is minimized. *See Salts v. Sullivan*, 958 F.2d 840, 844 (8th Cir. 1992). Even assuming that the ALJ should have included additional severe impairments at step two, the error is harmless so long as the ALJ considered all of a claimant's impairments in the remaining steps of the disability determination. *See Maziarz v. Secretary of Health and Human Servs*. 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at least one severe impairment, continued the sequential analysis, and ultimately considered all of Plaintiff's impairments, including non-severe impairments, in determining Plaintiff's RFC. *Id*.

**B. Residual Functional Capacity:**

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393. F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*,

6

390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404. 1545(a)(3). A "claimant's RFC is a medical question, therefore, an ALJ's RFC determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to set forth with specifics a claimant's limitations and to determine how those limitations affect a claimant's RFC. *Id*.

### 1. Credibility Analysis:

Plaintiff argues that the ALJ improperly disregarded her subjective complaints because he ignored objective medical evidence that confirmed her complaints, forgot the *Polaski* requirements, and rejected her testimony because of bias about her past drug use. (Pl. Br. 17-19).

In determining a claimant's RFC, "the ALJ must first evaluate the claimant's credibility." *Pearsall v. Massanari*, 274 F.3d1211, 1217 (8th Cir. 2002). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). It is well established that "credibility is primarily a matter for the ALJ to decided." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). "The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The Court should, "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

AO72A
(Rev. 8/82)

After reviewing the record, however, the Court finds that the ALJ performed a proper *Polaski* analysis. While Plaintiff is correct that the ALJ did not cite *Polaski* in his written decision (Pl. Br. 18), that did not amount to error because the ALJ discussed the *Polaski* factors. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). The ALJ specifically mentioned Plaintiff's testimony, function reports, and complaints to medical providers; noted her descriptions of pain, anxiety, depression, and cognitive abilities; referred to the strenuous activities that aggravated Plaintiff's pain; and described Plaintiff's medication use and side effects. (Tr. 14-17).

Along with discussing these *Polaski* factors, the ALJ identified several inconsistencies between Plaintiff's subjective complaints and the evidence in the record. The ALJ noted that Plaintiff was able to make small talk even though she did not enjoy being around people, and was capable of reading and attending Sunday School even though she said she had severe cognitive problems. (Tr. 14). The ALJ also recognized that Plaintiff discontinued her care, and she reported that her pain had improved around the time that she submitted her disability claim. (Tr. 16). The ALJ also found that Plaintiff did not indicate the level of mental and emotional distress she alleged in her testimony at her recent mental evaluation, and that the evidence overall was not consistent with her subjective complaints. (Tr. 16-17).

Plaintiff also argues that the ALJ did not consider the side effects of her Ultam and Darvocet prescriptions, which she argues "often produce side effects." Plaintiff never presented evidence, however, that she suffered side effects from these medications. The only place in the record where the Plaintiff complained of side effects was at her hearing where she testified that trazodone made her "kind of drowsy and yucky in the morning" and that she was "kind of blah" when she first woke up. (Tr. 39). At her September 2010 disability hearing, in a previous claim

8

for DIB[1], however, she testified that her medications, specifically trazodone, did not give her side effects (Tr. 81-82). She also did not report that her medications caused side effects on her Pain Questionnaire. (Tr. 230). The ALJ recognized these facts when he wrote, "the claimant's medications appear to be effective and do not produce any adverse side effects." (Pl. Br. 17, Tr. 16). Even if the ALJ did not discuss Plaintiff's medications, this normally would not amount to reversible error. The ALJ's decision did not need to include a discussion of how every *Polaski* factor related to the Plaintiff's credibility because the analytical framework was recognized and considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

 Finally, Plaintiff argues that the ALJ held her "past history of substance abuse against her, vigorously questioning her about it near the conclusion of the hearing." (Pl. Br. 19). The Court has reviewed the transcript and finds that the ALJ's questions did not demonstrate bias. At the beginning of the hearing, the ALJ identified that one of the relevant issues was whether a substance abuse disorder was "a contributing factor material to the determination of disability under section 223(d)(2) and 1614(a)(3)(J) of the Social Security Act." (Tr. 28). Near the hearing's end, the ALJ asked Plaintiff if she still used alcohol or narcotics, when she last used, if she abused her prescribed medications, and if she had ever been disciplined or fired from a job because of alcohol or drug use. (Tr. 51). The ALJ's questions were relevant and did not indicate any bias, and the ALJ's written decision did not reference Plaintiff's past substance abuse.

 The ALJ's credibility determination was also consistent with other substantial evidence in the record. A review of the record shows that Plaintiff described her medications as effective

---

[1]Plaintiff applied for DIB benefits on August 19, 2009, alleging disability beginning in April 2002. A hearing was held on September 8, 2010 (Tr. 58-107), and Plaintiff was determined to not be disabled by an ALJ in a decision dated November 22, 2010. (Tr. 124).

(Tr. 47, 82, 360, 367, 369, 371, 452, 509, 532), and she told physicians that she did not experience side effects. (Tr. 330, 355). Plaintiff missed and delayed several appointments, and she often failed to take her prescribed medications, which weighed against her credibility. (Tr. 316, 364, 369, 373-374, 396). *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *see also Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). She also reported to the SSA that she visited a psychologist at the Good Samaritan Clinic once a month, but the clinic did not have a psychologist on staff. (Tr. 240).

The record shows that the ALJ properly considered the *Polaski* factors, and substantial evidence in the record supported the ALJ's credibility determination. The ALJ was in the best position to gauge the credibility of testimony, and his findings on Plaintiff's subjective complaints are granted deference. *See Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

**2. RFC Determination:**

Plaintiff argues that the ALJ failed to consider many of her alleged physical impairments and did not consider her history of mental impairments in determining her RFC. (Pl. Br. 22). As already mentioned, the ALJ did not discuss impairments that he determined were not severe, and the ALJ specifically discussed Plaintiff's history of depression, suicidal ideation, dysphoria, and her GAF scores. (Tr. 16-17).

Plaintiff also argues that the ALJ only gave lip service to Plaintiff's treating physicians and did not assign appropriate weight to the medical evidence. (Pl Br. 20). The ALJ, however, reviewed the evidence from Plaintiff's treating physicians and noted that Plaintiff had well documented depression, back pain, and shoulder pain. (Tr. 15-16). A review of the record showed that Plaintiff had eight visits with her treating physicians at the Good Samaritan Clinic

10

around the relevant time period. On March 3, 2011, Plaintiff complained that she felt "more depressed lately," but noted that her back pain was better after seeing a chiropractor and taking Flexeril. (Tr. 426). On March 31, 2011, she complained of depression and anxiety and generalized aches and fatigue, and her medication was switched from Paxil and Wellbutrin to Effexor. (Tr. 512). On May 11, 2011, she complained she had hand pain and numbness in her left fingers, especially at night, and she was given a splint for her left hand. (Tr. 510). On July 21, 2011, Plaintiff said the splint had helped the pain and numbness in her left hand. (Tr. 509). An x-ray of her hand was taken, and Plaintiff was assessed as having Carpal Tunnel Syndrome-Better, Osteopenia, and Depression-Better. (Tr. 509). On September 15, 2011, Plaintiff complained of chronic low back pain. She saw a chiropractor and stated at a visit on September 29, 2011, that her back was better. (Tr. 535-536). On December 20, 2011, and on February 23, 2012, Plaintiff complained of migraines. She was diagnosed with sinusitis and migraines, prescribed antibiotics and Zomig, and her pain improved. (Tr. 532-534).

The ALJ stated he gave great weight to these and older medical records, but appropriately concluded that Plaintiff's migraines, back pain, and carpal tunnel conditions were not disabling because her conditions improved after treatment. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). Although the ALJ discounted many of Plaintiff's subjective complaints, the ALJ found the medical evidence from Plaintiff's treating physicians was also consistent with the evidence from the State's consulting physicians. (Tr. 17).

The State's physicians found that, while Plaintiff's mental impairments limited her, they were not disabling. Dr. Patricia Walz, a State examining psychiatrist, met with Plaintiff on November 2, 2009, and diagnosed dysthymia and polysubstance abuse. (Tr. 396-401). Dr. Walz assessed

11

Plaintiff's GAF as 45, but attributed the low score to Plaintiff's substance abuse. Plaintiff admitted to being positive for methamphetamine, and Dr. Walz indicated that she likely understated her narcotics problem. (Tr. 400-401). On May 16, 2011, Dr. Terry Efird, a State examining psychiatrist, assessed Plaintiff's GAF as a 49-59, and diagnosed depressive disorder, panic disorder, and methamphetamine abuse in remission. (Tr. 451-455). Dr. Efird opined that Plaintiff had "the capacity to perform basic cognitive tasks required for basic work like activities." (Tr. 454). Dr. Sheri Simon, a State non-examining psychiatrist, opined that Plaintiff was capable of semi-skilled work so long as interpersonal contact was routine but superficial, the complexity of tasks were learned by experience, and there was direct supervision for more complex tasks; an opinion affirmed by Dr. Jerry Henderson. (Tr. 464, 521).

Similarly, there was substantial evidence that Plaintiff's physical impairments were not disabling. On October 20, 2009, Plaintiff's x-rays of her lumbar spine, hands, and feet were reviewed by Dr. Deland Burks who assessed that her lumbar spine x-ray was negative, that she had only mild degenerative osteoarthritis in her hands, and she had no significant abnormality in her foot. (Tr. 385). The same day, Plaintiff met with Dr. Stephanie Frisbie, a State examining and consultative physician, who assessed that Plaintiff had a steady gait; had 5/5 muscle strength; could hold a pen and write; could pick up a coin; was able to stand and walk without assistive devices; had 100% normal grip; heard normal conversation and had 0% auditory loss; had normal range of motion in all of her extremities except for tenderness in her left fourth finger; and presented as having no serious mood disorders or psychosis. (Tr. 386-388). Dr. Frisbie did not note any limitations on Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. (Tr. 389). Dr. Steven Strode, a State non-examining physician, similarly opined

that Plaintiff was capable of light work with the limitations of occasional overhead reaching and no exposures to fumes, odors, gases and poor ventilation; an opinion which was affirmed by Dr. Jima Takach. (Tr. 480-487, 526).

The record also shows that Plaintiff listed in her Function Report that she completed housework, took care of her pets, and prepared meals. (Tr. 231). She reported to medical providers that she did not need assistance with her daily activities. (Tr. 398).While she sometimes reported being deaf or hard of hearing, Plaintiff never received a diagnosis of hearing loss from an acceptable medical source, and she was able to listen and communicate even when not using her hearing aids. (Tr. 297, 396, 452). Plaintiff also did not reliably take her medications (Tr. 364, 373-374, 396), delayed and missed appointments (Tr. 316, 369, 371, 373-374), did not seek mental health treatment after 2008 (Tr. 397, 452), and reported on several occasions that her conditions responded to treatment. (Tr. 40, 535-536, 532). After reviewing all of the medical evidence, the Court concludes that the ALJ's RFC determination was a based on substantial evidence.

**C. Vocational Expert:**

Plaintiff argues as her final point that the ALJ's conclusion that she could perform all of her PRW was not based on substantial evidence because it was not supported by the VE's testimony. (Pl. Br. 19). While Plaintiff is partially correct on this point, the ALJ's error was harmless.

The ALJ asked the VE about the exertional demands and skill requirements of Plaintiff's PRW. (Tr. 53). In response, the VE testifed Plaintiff's PRW as a dishwasher, cashier, stocker, and pipe gluer ranged from light to medium, unskilled. (Tr. 53). The ALJ then asked the VE a

13

hypothetical question that reflected Plaintiff's vocational factors and RFC to determine whether Plaintiff could perform her PRW. (Tr. 54-56). In response, the VE testified,

> A. "I would say [she] can perform the job as a gluer in gluing the PVC pipe together. I'm going to fit ... cashier II has more than incidental contact with the public.
> Q. Okay so it would just be the gluer?
> A. Yes.

The VE also testified that he had relied on the Dictionary of Occupational Titles (DOT) numbers to corroborated his testimony. (Tr. 56).

Testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir.1996). The ALJ's hypothetical to the VE accounted for all of Plaintiff's proven impairments and constituted substantial evidence that Plaintiff could perform her PRW as a gluer. *Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir. 2011).

The ALJ determined, however, that Plaintiff had the RFC to perform her PRW as a kitchen helper/dishwasher, cashier, and retail stocker as well. (Tr. 18). Because the VE testified that plaintiff could only perform her PRW as a pipe gluer there was not substantial evidence that Plaintiff had the RFC to perform her other PRW. The ALJ's error was harmless, however, because substantial evidence existed that Plaintiff could perform her PRW as a gluer, which was sufficient to find that Plaintiff was not disabled. *See Barnhart v. Thomas,* 540 U.S. 20, 23 (2003); *Rater v. Chater*, 73 F.3d 796, 799 (8th Cir. 1996).

**D. Conclusion:**.

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision

14

should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 2nd day of December 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE